## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**FREDERICK PILITZ,**

**Plaintiff,**

**-vs-**                                                    **Case No.  6:11-cv-388-Orl-19KRS**

**BLUEGREEN CORPORATION,**

**Defendant.**

_____

# ORDER

This case comes before the Court on the following:

1.     Motion to Dismiss and Compel Arbitration by Bluegreen Corporation (Doc. No. 12,

filed May 6, 2011); and

2.     Memorandum of Law in Opposition to Defendant's Motion to Dismiss and Compel

Arbitration (Doc. No. 15, filed May 20, 2011).

## Background

In January of 2006 Frederick Pilitz ("Plaintiff") began working for Bluegreen Corporation

("Bluegreen") as a Sales Person.[1]  (Doc. No. 1 ¶ 15.)  In March of 2007 Plaintiff was promoted to

Sales Manager by Steven Matejcek, Director of Sales.[2]  (*Id*. ¶ 16.)  Matejcek was subsequently

replaced by Steven Phelps. (*Id.* ¶ 17.) Plaintiff alleges that Phelps repeatedly made ageist comments

about Plaintiff in the presence of Plaintiff and his coworkers, customers, and wife.  (*Id*. ¶¶ 19-21.)

---

[1] The facts presented in this Order are derived from the allegations of the Complaint.  (Doc. No. 1.)  These facts are included only to provide context and should not be construed as findings of fact.

[2] Plaintiff was born on February 15, 1943.  (Doc. No. 1 ¶ 14.)

According to Plaintiff, Training Officer Joel Font also made ageist comments about Plaintiff.  (*Id.* ¶ 22.)  Plaintiff claims that he was offended by these comments and complained to numerous Senior Sales Managers.  (*Id.* ¶ 24.)

Plaintiff asserts that on April 6, 2009, Phelps demoted Plaintiff from his Sales Manager position back to a Sales Person position and transferred him to the In-House Sales Department.  (*Id.* ¶¶ 26, 28.)  In May of 2009 In-House Sales Manager Dominic Spirito allegedly told Plaintiff that he would no longer be working in the In-House Sales Department but would instead be assigned the job of a "deeder."  (*Id.* ¶¶ 38, 40.)  According to Plaintiff, Spirito told him to contact Phelps for more details regarding the "deeder" position when Phelps returned from vacation.  (*Id.* ¶ 41.)  Plaintiff maintains that he contacted Phelps regarding the deeder position and that Phelps told Plaintiff that he would contact him when he returned from vacation.  (*Id.* ¶ 43.)  Phelps never contacted Plaintiff.  (*Id.* ¶ 44.)  On June 6, 2009, Plaintiff went to Human Resources to ask about the status of his deeder position.  (*Id.* ¶ 45.)   Human Resources informed Plaintiff that he had been discharged from employment the week before.  (*Id.* ¶ 46.)

On March 16, 2011, Plaintiff filed a three-count Complaint against Bluegreen.  Counts I and II allege that Bluegreen violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. ("ADEA") and the Florida Civil Rights Act of 1992, § 760, Fla. Stat. ("FCRA") by demoting, transferring, and discharging Plaintiff.  (Doc. No. 1 ¶¶ 54-57).  Count III alleges that Bluegreen created a hostile work environment by violating the ADEA and FCRA.  (*Id.* ¶ 58-59.)

On May 6, 2011, Bluegreen filed the present Motion to Dismiss and Compel Arbitration.  (Doc. No. 12.)  In its Motion, Bluegreen maintains that this Court should enter an order dismissing the present action and compelling arbitration pursuant to the parties' arbitration agreement.  (*Id.* at

1.)  In response, Plaintiff maintains that the arbitration agreement is unconscionable and therefore unenforceable.  (Doc. No. 15 at 15.)  In the alternative, Plaintiff argues that the Court should retain jurisdiction over the parties during arbitration.  (*Id*. at 1.)

## Analysis

Although previously disfavored by courts, agreements to resolve disputes between parties through arbitration now receive near universal approval.  *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002) (citation omitted); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985) ("[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution.").  In 1925, Congress demonstrated its approval of arbitration by enacting the Federal Arbitration Act ("FAA").  9 U.S.C. § 1 *et. seq.*  "The FAA's purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place agreements to arbitrate on the same footing as other contracts."  *Weeks*, 291 F.3d at 1312 (11th Cir. 2002) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219-20 & n.6 (1985)).

The primary substantive provision of the FAA states that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Additionally, under the FAA, a district court may compel arbitration and stay the underlying action if the parties entered into an earlier agreement to arbitrate their dispute.  9 U.S.C. § 3; *see also John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094,

1095 (11th Cir. 2003) ("Under the FAA, 9 U.S.C. § 1 *et seq.*, a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute.").

"Courts have consistently found that claims arising under federal statutes may be the subject of arbitration agreements and are enforceable under the FAA." *Weeks*, 291 F.3d at 1313 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." (quoting *Mitsubishi*, 473 U.S. at 628)). As a result, arbitration agreements encompassing claims brought under federal employment discrimination statutes, including the ADEA, receive near universal approval. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26-30 (1991) (reasoning that because nothing in the text, legislative history, or the purpose of the ADEA demonstrated a Congressional aim to preclude arbitration, compulsory arbitration agreements for ADEA claims are enforceable under the FAA); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 700 (11th Cir. 1992) (finding that Title VII, like the ADEA, does not prohibit mandatory arbitration for claims arising under the statute).

Both the FAA and the Florida Arbitration Code permit a challenge to the validity of an arbitration agreement based upon any state-law contract defense. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (holding that § 2 of the FAA permits "generally applicable contract defenses, such as fraud, duress, or unconscionability, [to] be applied to invalidate arbitration agreements"). Under Florida law, a court may decline to enforce a contract on the ground that it is unconscionable. *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999) (citing *Steinhardt v. Rudolph*, 422 So. 2d 884, 889 (Fla. 3d DCA 1982)). However, in order to reach a conclusion of unconscionability, a court applying Florida law must determine that the contract is

both procedurally and substantively unconscionable. *Belcher v. Kier*, 558 So. 2d 1039, 1040 (Fla. 2d DCA 1990); *Complete Interiors, Inc. v. Behan*, 558 So. 2d 48, 52 (Fla. 5th DCA 1990). "Plaintiffs carry the burden of establishing that the arbitration provision at issue is both procedurally and substantively unconscionable." *Sanders v. Comcast Cable Holdings, LLC*, No. 3:07-cv-918-J-33HTS, 2008 WL 150479, at *6 (M.D. Fla. Jan. 14, 2008) (citing *Murphy v. Courtesy Ford, LLC*, 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006)); *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 288 (Fla. 1st DCA 2003).

"The procedural component of unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms." *Powertel*, 743 So. 2d at 574. A court may find that a contract is procedurally unconscionable if important terms were "hidden in a maze of fine print and minimized by deceptive sales practices[.]" *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965). "Substantive unconscionability, on the other hand, requires an assessment of whether the contract terms are so outrageously unfair as to shock the judicial conscience. A substantively unconscionable contract is one that no man in his senses and not under delusion would make on one hand, and as no honest and fair man would accept on the other." *Bland v. Health Care & Retirement Corp. of Am.*, 927 So. 2d 252, 256 (Fla. 2d DCA 2006) (quotations omitted); *Kohl v. Bay Colony Club Condo., Inc.*, 398 So. 2d 865, 868 (Fla. 4th DCA 1981).

## I.  Agreement to Arbitrate

In the present case, the allegations set forth in the Complaint fall within the scope of the Bluegreen Arbitration Agreement ("Arbitration Agreement").[3]  (Doc. No. 12 at 5-6; Doc. No. 15.) Specifically, Plaintiff's allegations that Bluegreen violated the ADEA and FCRA by demoting, transferring, and discharging Plaintiff and that Bluegreen created a hostile work environment by violating the ADEA and FCRA are covered by the express terms of the Arbitration Agreement, providing that:

> Disputes subject to arbitration are all Disputes between the parties, which may otherwise be brought in a court or before a governmental agency, arising out of or related to the Individual's application for employment, employment, or termination of employment with the Company. . . .
>
> Such Disputes include, but are not limited to, claims of refusal to hire, wrongful termination, . . . retaliation, . . . and any other tort, contract, equitable, statutory, or constitution claim, . . . .  Disputes also include any claims of discrimination or harassment prohibited by applicable law. . . .

(Doc. No. 12-1 at 1-2.) Thus, the allegations set forth in the Complaint, which arise out of Plaintiff's employment and termination of employment, are subject to arbitration by the express terms of the Arbitration Agreement.

## II.  Unconscionability

Plaintiff contends that an order compelling arbitration is inappropriate because the Arbitration Agreement is unconscionable and therefore unenforceable under Florida law.  In support of this contention, Plaintiff cites the provisions of the Arbitration Agreement and the incorporated Bluegreen Corporation Arbitration Rules ("Arbitration Rules") that: (1) require Plaintiff to pay an arbitration filing fee of $350.00; (2) do not specifically identify the arbitration administrator or

---

[3] Plaintiff does not dispute Defendant's contention that the allegations of the Complaint fall within the scope of the Arbitration Agreement.  (Doc. No. 15.)

arbitration service to be used; (3) place limitations on discovery; (4) permit Defendant to have three corporate representatives present at a hearing; and (5) require Plaintiff to file a notice of arbitration within the applicable limitations period.  (Doc. No. 15 at 2-7.)  The Court will discuss each of these provisions in turn.

### A.  Filing Fee

Plaintiff first contends that the arbitration filing fee of $350.00, a fee equal to the fee for filing a civil action in the United States District Court, is an unconscionable impediment to his ability to vindicate his ADEA rights, in part because he has already paid a $350.00 filing fee in this Court.[4]  (Doc. No. 15 at 2.)  Plaintiff's argument is without merit.  In *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), the United States Supreme Court held that a party seeking to invalidate an arbitration agreement on the ground that arbitration expenses prevent a litigant from effectively vindicating federal statutory rights bears the burden to show the likelihood of incurring costs of that magnitude. *Id*. at 92.  Here, Plaintiff has not demonstrated that the $350.00 filing fee required by the Arbitration Agreement, alone, prevents Plaintiff from effectively vindicating his federal statutory rights.  To the contrary, Plaintiff's payment of the $350.00 filing fee in this Court belies a claim that the Arbitration Agreement provision requiring the same filing fee would somehow prevent Plaintiff from vindicating his rights.  Further, there is no record evidence relating to Plaintiff's personal financial resources, assets, or income, and counsel's conclusory assertion that the arbitration filing fee is "unconscionable as an unwarranted impediment on Plaintiff's ability to access the Court and vindicate his ADEA rights" is insufficient to

---

[4] To the extent Plaintiff argues that the Arbitration Agreement is unenforceable because the Table of Contents incorrectly identifies the page of certain paragraphs, Plaintiff does not demonstrate how such a typographical error is either procedurally or substantively unconscionable.

demonstrate the same.  *See Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1260 (11th Cir. 2003) (finding the contention in litigant's affidavit that he "feared" the imposition of prohibitive fees "wholly inadequate to establish that the arbitration would result in prohibitive costs that force him to relinquish his claim under Title VII").

**B.  Arbitration Administrator/Service**

Plaintiff next contends that the Arbitration Agreement is procedurally unconscionable because it fails to specifically identify an arbitration administrator or the particular arbitration service to be used.  (Doc. No. 15 at 5.)  The Court disagrees.  The Arbitration Agreement expressly identifies the arbitration administer as Bluegreen's Director of Corporate Legal Affairs.  (Doc. No. 12-3 at 4.)  Moreover, the Arbitration Agreement provides in simple, self-contained language, that the *parties* shall select an arbitrator from a list of seven (7) proposed qualified arbitrators provided by "the arbitration/dispute resolution service used in the particular arbitration."  (Doc. No. 12-3 at 6.)  The parties are instructed to identify any proposed arbitrators from the list provided by the arbitration/dispute resolution service who are unacceptable, and these names are stricken from the list.  (*Id.*)  The arbitrator listed first on the list after the unacceptable candidates are removed will then be selected as the arbitrator.  If no arbitrators remain on the first list, the arbitration service shall provide additional panels until an arbitrator is selected.  (*Id.*)  Thus, regardless of the particular arbitration service selected to provide the list of proposed arbitrators, the procedure for selecting an arbitrator is clearly defined by the Arbitration Agreement and allows Plaintiff to reject any arbitrator he finds unacceptable.  Moreover, Plaintiff provides no argument or citation to authority demonstrating why failing to specifically identify an arbitration service is procedurally unconscionable as opposed to simply potentially unfavorable to Plaintiff.  *See Gainesville Health*

*Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. 1st DCA 2003) ("The concept of unconscionability does not mean [] that a court will relieve a party of his obligations under a contract because he has made a bad bargain containing contractual terms which are unreasonable or impose an onerous hardship on him." (quotation omitted)).   Accordingly, the Arbitration Agreement's failure to specify a particular arbitration service is not procedurally unconscionable.

### C.  Limitations on Discovery

The Arbitration Rules limit the discovery period to sixty days and allow only three depositions, twenty interrogatories, and fifteen requests for documents per side.  (Doc. No. 12-3 at 8-9.) Plaintiff contends that such limitations are substantively unconscionable because Plaintiff will need to depose at least ten witnesses.  (Doc. No. 15 at 5-6.)  Plaintiff's argument is not well taken. As the Supreme Court has recognized, limitations on discovery for ADEA claims in arbitration are entirely permissible.  In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), the Supreme Court upheld the arbitration agreement where the plaintiff failed to demonstrate that the limited discovery would deprive the ADEA claimant of a fair opportunity to present his claims, reasoning that "[a]lthough [the] procedures might not be as extensive as in federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'"  *Id.* at 31 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).  Following *Gilmer*, numerous courts have upheld arbitration agreements limiting discovery in the manner provided by the present Arbitration Agreement.  *See, e.g.*, *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005) (finding discovery limitations to be consistent with the goals of arbitration); *Bhim v. Rent-A-Center, Inc.*, 655 F. Supp. 2d 1307, 1314 (S.D. Fla. 2009) (upholding an arbitration agreement

between an employer and employee that limited each party to deposing one non-expert witness); *Fernandez v. Clear Channel Broadcasting, Inc.*, 268 F. Supp. 2d 1365, 1368 (S.D. Fla. 2003) (enforcing an arbitration agreement between an employer and employee that limited the parties to three depositions, finding that the limitations would not prevent employee from having a fair opportunity to present his claims).  Moreover, Plaintiff ignores the provision of the Arbitration Agreement that explicitly provides for additional discovery "as the Arbitrator considers necessary to full and fair exploration of the issues in dispute."  (Doc. No. 12-3 at 8); *see Bhim*, 655 F. Supp. 2d at 1314 (enforcing an arbitration agreement that provided limited discovery but permitted additional discovery by leave of arbitrator or mutual stipulation).  Thus, the limitations on discovery provided in the Arbitration Rules are not substantively unconscionable.

### D.  Corporate Representatives

The Arbitration Rules provide that "[a]ll parties, including up to three (3) corporate representatives, shall have the right to be present during the proceedings."  (Doc. No. 12-3 at 11.) Plaintiff now contends that this provision "runs afoul of long established Rules of Sequestration" and is "unreasonably favorable" to Bluegreen.  (Doc. No. 15 at 7.)  However, Defendant provides no argument or citation to authority to support a finding that permitting up to three corporate representatives to be present at a hearing is procedurally or substantively unconscionable, and the Court is unable to find any.  As previously discussed, "[t]he concept of unconscionability does not mean [] that a court will relieve a party of his obligations under a contract because he has made a bad bargain containing contractual terms which are unreasonable or impose an onerous hardship on him."  *Gainesville Health Care Ctr.*, 857 So. 2d at 284 (quotation omitted).  Accordingly, the

Arbitration Agreement is not substantively unconscionable for permitting three corporate representatives to attend a hearing.

### E.  Statute of Limitations

Finally, Plaintiff contends that the Arbitration Agreement is unconscionable because if Plaintiff were to file a request for arbitration at this juncture, the request would fall outside the ninety day statute of limitations period for arbitration.  (Doc. No. 15 at 3.)  Plaintiff's argument is not well taken.  "The Florida Supreme Court [has] determined that a 'contractual provision shortening the period of time for filing a suit [is] not contrary to a strong public policy.'" *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2005) (quoting *Burroughs Corp. v. Suntogs of Miami, Inc.*, 472 So. 2d 1166, 1169 (Fla. 1985)); *Sanders v. Comcast Cable Holdings, LLC*, No. 3:07-cv-918-J-33HTS, 2008 WL 150479, at *12 (M.D. Fla. Jan. 14, 2008) (finding that an arbitration provision shortening the applicable statute of limitations is not substantively unconscionable).  Considering that arbitration clauses limiting the applicable statute of limitations are repeatedly upheld by Florida courts, it cannot be said that the statute of limitations period set forth in the Arbitration Agreement, which is consistent with the applicable statute of limitations period for filing the underlying charge or lawsuit, is substantively unconscionable.[5]  To the extent Plaintiff argues that his claims are barred by the statute of limitations provision of the Arbitration Agreement, such an "argument is premature and should not be decided by this court, as the issue of timeliness is a question for an arbitrator."  *Premier Real Estate Holdings, LLC v. Butch*, 24 So. 3d 708, 712 (Fla. 4th DCA 2009) (citing *Thenet v. Jenne*, 968 So. 2d 46, 46-47 (Fla. 4th DCA 2007)).

---

[5]  The Arbitration Agreement provides that "[a]ll disputes must be brought under this Agreement within the applicable limitations period in filing a charge or lawsuit from the event or occurrence giving rise to the dispute."  (Doc. No. 12-1 at 4.)

### F.  Conclusion

In sum, Plaintiff failed to demonstrate that the Arbitration Agreement and incorporated Arbitration Rules are either procedurally or substantively unconscionable under Florida law. Accordingly, Plaintiff's Motion does not support a conclusion that the Arbitration Agreement is invalid or otherwise unenforceable.

## III.  Disposition

Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement,'" if the applicant for stay is not in default in proceeding with arbitration.  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (quoting 9 U.S.C. § 3)).  Nonetheless, Bluegreen argues that Section 3 does not require the Court to stay the present action because any post-arbitration remedies sought by the parties would not involve a merits adjudication of the controversy.  (Doc. No. 12 at 14.)

In the Eleventh Circuit, some district courts opt to dismiss arbitrable claims where all of the issues raised in the complaint must be submitted to arbitration.  *See, e.g.*, *Olsher Metals Corp. v. Olsher*, No. 01-3212-CIV, 2003 WL 25600635, at *9 (S.D. Fla. Mar. 26, 2003) (dismissing claims subject to arbitration in Italy).  However, the vast majority of district courts in the Eleventh Circuit stay arbitrable claims pending arbitration, citing the express language of 9 U.S.C. § 3.  *See, e.g.*, *Dorward v. Macy's Inc.*, No. 2:10-cv-669-FtM-29DNF, 2011 WL 2893118, at *12 (M.D. Fla. July 20, 2011); *Mainsail Dev., LLC v. Rusco Invs., Inc.*, No.8:11-cv-45-T-33AEP, 2011 WL 2881599, at *1 (M.D. Fla. July 19, 2011) (staying action pending notification that plaintiff has exhausted arbitration).  While Bluegreen cites *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992), a Fifth Circuit decision, for the proposition that a case should be dismissed when all of the

issues raised in the district court are submitted to arbitration, the Eleventh Circuit has expressed a preference that district courts stay arbitrable claims rather than dismiss them.  *See Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) (reversing the dismissal of arbitrable claims, remanding with instructions to enter a stay, and stating that "[u]pon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration" (citing 9 U.S.C. § 3)).  Accordingly, Plaintiff's claims will be stayed pending arbitration.

## Conclusion

Based on the foregoing, the Motion to Dismiss and Compel Arbitration by Bluegreen Corporation, (Doc. No. 12, filed May 6, 2011), is **GRANTED in part** and **DENIED in part**.  The Motion is **GRANTED** to the extent it seeks to compel arbitration of the present claims.  The Motion is **DENIED** in all other respects.  The parties are **ORDERED** to submit this dispute to arbitration pursuant to the provisions of the Arbitration Agreement within thirty (30) days from the date of this Order.  The present action is **STAYED** and **ADMINISTRATIVELY CLOSED** pending resolution of the arbitration proceedings.  The parties shall file a joint status report within 90 days of the date of this Order to inform the Court of the status of the arbitration proceedings.  Thereafter, the parties shall continue to file joint status reports with the Court every 90 days until the arbitration proceedings are completed.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on August 3rd, 2011.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Party